UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CHRISTIE WEAVER,

                 Plaintiff,                                 Case No.  1:16-CV-300

v.

                                            HON. ROBERT J. JONKER

COMMISSIONER OF SOCIAL
SECURITY,

                 Defendant,

_____/

## OPINION

        This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff seeks review of the Commissioner's decision denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

## STANDARD OF REVIEW

        The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v.*

*Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight.  *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was forty-three years of age on her alleged disability onset date.  (PageID.129, 142.)  She completed high school and worked previously as a warehouse worker, secretary, and office manager.  (PageID.82, 94, 230.)  Plaintiff first applied for benefits on July 13, 2010, alleging that she had been disabled since November 8, 2009, due to degenerative disc disease and depression.  (PageID.101.)  Plaintiff's application was denied, after which time she requested

a hearing before an Administrative Law Judge (ALJ).  On February 29, 2012, Plaintiff appeared before ALJ Nicholas Ohanesian for an administrative hearing.  (PageID.114.)  In a written decision dated March 30, 2012, the ALJ determined that Plaintiff was not disabled.  (PageID.111–128.)

Plaintiff did not further pursue this application, but instead reapplied for benefits on May 11, 2013, this time alleging that she had been disabled since March 31, 2012, the day after the prior decision, due to degenerative disc disease, sciatica, chronic bronchitis, anxiety, coronary artery disease, and major depression.  (PageID.129, 142, 214–215.)  These applications were also denied, after which time Plaintiff again requested a hearing before an ALJ.  (PageID.159–172.)  On June 16, 2014, Plaintiff appeared with her counsel before ALJ William Reamon with testimony being offered by Plaintiff and a vocational expert.  (PageID.71–98.)  In a written decision dated September 26, 2014, the ALJ determined that Plaintiff was not disabled.  (PageID.45–69.)  The Appeals Council declined to review the ALJ's determination, making it the Commissioner's final decision in the matter.  (PageID.36–41.)  This action followed, seeking judicial review of the ALJ's decision under 42 U.S.C. § 405(g).

### ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a

---

[1] 1.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2.   An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3.   If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Reamon determined Plaintiff's claim failed at step five. The ALJ began his discussion by first stating that he found no new and material evidence had been entered into the record since the prior decision. (PageID.48.) Accordingly, he indicated that he had adopted the RFC from the prior decision consistent with Sixth Circuit and agency authority. (PageID.48.) Proceeding with the analysis, at step one, ALJ Reamon found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (PageID.51.) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) coronary artery disease; (2) degenerative disc disease to the lumbar spine; (3) hypertension; (4) obesity; (5) an affective disorder; and (6) anxiety. (PageID.51.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments

---

4.    If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5.    If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

found in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (PageID.51–53.)  At step four, the ALJ determined

Plaintiff retained the RFC based on all the impairments:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and
> 416.967(a) with exceptions.  Specifically, the claimant is able to lift
> up to 10 pounds occasionally.  She requires the option to alternate
> between sitting and standing positions at 15-minute intervals
> throughout the workday.  The claimant is able to climb stairs and
> ramps occasionally, but is never to climb ladders, ropes, or scaffolds.
> She is able to frequently balance and occasionally stoop, kneel,
> crouch and crawl.  She must avoid concentrated exposure to extreme
> cold, heat, humidity, vibration and exposure to pulmonary irritants,
> such as fumes, odors, dusts, gases and poorly ventilated areas.
> Mentally, her work is limited to simple, routine and repetitive tasks.

(PageID.54.)  Continuing with the fourth step, the ALJ determined that Plaintiff was unable to

perform any of her past relevant work.  (PageID.62.)  At the fifth step, the ALJ questioned the VE

to determine whether a significant number of jobs exist in the economy that Plaintiff could perform

given her limitations.  *See Richardson*, 735 F.2d at 964.  The VE testified that Plaintiff could

perform other work as a production assembler (2,400 Michigan jobs and 28,000 national jobs),

inspector tester (700 Michigan jobs and 13,000 national jobs), and machine operator (1,300

Michigan jobs and 44,000 national jobs).  (PageID.95.)  Based on this record, the ALJ found that

Plaintiff was capable of making a successful adjustment to work that exists in significant numbers

in the national economy.  (PageID.64.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from March 31, 2012,

through September 26, 2014, the date of decision.  (PageID.64.)

## DISCUSSION

In assessing Plaintiff's present claim for benefits, ALJ Reamon indicated he adopted

the RFC findings previously articulated by ALJ Ohanesian.  (PageID.48.)  Plaintiff argues that

because her physical and mental impairments worsened subsequent to ALJ Ohanesian's decision, the decision by ALJ Reamon to adopt this previous RFC is not supported by substantial evidence. The issue of whether or when a subsequent ALJ must follow an RFC determination articulated by a prior ALJ has been addressed by the Sixth Circuit in *Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th Cir.1990) and *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), as well as by the Social Security Administration in Acquiescence Rulings 98–3(6) and 98–4(6).

### A.    *Dennard v. Secretary of Health and Human Services.*

Dennard filed an application for benefits which was eventually denied on the ground that while he could no longer perform his past relevant work, he retained the ability to perform sedentary work which existed in significant numbers. *Dennard*, 907 F.2d at 598–99. Dennard later submitted another application for benefits. This latter application was denied by an ALJ on the ground that Dennard could perform his past relevant work. *Id.* at 599. An appeal of this decision to federal district court was unsuccessful. The Sixth Circuit reversed the district court and ordered that the matter be remanded for further consideration. *Id.* at 600. Specifically, the court held that the latter ALJ was estopped, on *res judicata* grounds, from contradicting the prior determination that Plaintiff was unable to perform his past relevant work. *Id.*

### B.    *Drummond v. Commissioner of Social Security.*

Drummond filed an application for benefits which was denied based on a finding that while she could no longer perform her past relevant work she could perform sedentary work which existed in significant numbers. *Drummond*, 126 F.3d at 838. Drummond later filed another application for benefits which was denied based on the finding that she retained the ability to

perform medium work. *Id.* at 838–39. After unsuccessfully appealing the matter in federal district

court, Drummond pursued the matter in the Sixth Circuit. *Id.* at 839–40. Based, in part, on the

*Dennard* decision, the *Drummond* court held that "[w]hen the Commissioner has made a final

decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this

determination absent changed circumstances." *Id.* at 840–42. Thus, if an earlier ALJ makes a

finding regarding a claimant's RFC, a later ALJ is bound by that RFC determination absent evidence

to the contrary. *See, e.g.*, *Gay v. Comm'r of Soc. Sec.*, 520 F. App'x 354, 356 (6th Cir. 2013).

C.      *Acquiescence Rulings 98–3(6) and 98–4(6).*

Finding that *Dennard* and *Drummond* conflicted with Social Security policy, the

Social Security Administration issued Acquiescence Rulings 98–3(6) and 98–4(6). *See* Acquiescence

Ruling 98–3(6), 1998 WL 274051 (S.S.A. June 1, 1998); Acquiescence Ruling 98–4(6), 1998 WL

274052 (S.S.A. June 1, 1998). With respect to how *Dennard* and *Drummond* differed from Social

Security policy, the Social Security Administration observed:

> Under SSA policy, if a determination or decision on a disability claim
> has become final, the Agency may apply administrative *res judicata*
> with respect to a subsequent disability claim under the same title of
> the Act if the same parties, facts and issues are involved in both the
> prior and subsequent claims. However, if the subsequent claim
> involves deciding whether the claimant is disabled during a period
> that was not adjudicated in the final determination or decision on the
> prior claim, SSA considers the issue of disability with respect to the
> unadjudicated period to be a new issue that prevents the application
> of administrative *res judicata*. Thus, when adjudicating a subsequent
> disability claim involving an unadjudicated period, SSA considers the
> facts and issues de novo in determining disability with respect to the
> unadjudicated period.

Acquiescence Ruling 98–3(6), 1998 WL 274051; Acquiescence Ruling 98–4(6), 1998 WL 274052.

As the Social Security Administration recognized, the *Dennard* and *Drummond* decisions conflicted

with Social Security policy. Specifically, the Sixth Circuit concluded that where a final decision by the Social Security Administration contains findings regarding the claimant's ability to perform her past relevant work (*Dennard*) or the claimant's RFC (*Drummond*), the Administration "may not make a different finding in adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim unless new and additional evidence or changed circumstances provide a basis for a different finding." Acquiescence Ruling 98–3(6), 1998 WL 274051; Acquiescence Ruling 98–4(6).

Accordingly, the Social Security Administration concluded that it would apply *Dennard* and *Drummond*, within the Sixth Circuit under the following procedure:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

Acquiescence Ruling 98–3(6), 1998 WL 274051; Acquiescence Ruling 98–4(6), 1998 WL 274052. In other words, the Social Security Administration adopted, with respect to applications brought within the geographic territory of the Sixth Circuit, the holdings in *Dennard* and *Drummond*. In sum, an Administrative Law Judge is bound by a previous Administrative Law Judge's RFC determination absent changed circumstances.

D.    *ALJ Reamon's RFC Assessment.*

In his decision denying Plaintiff's claim, ALJ Reamon found that "[b]ased on the evidence after the date of the [prior] decision, the undersigned finds that [Plaintiff's] condition has

not worsened and there is no new and material evidence to alter the above residual functional capacity given. As such, the same residual functional capacity is warranted and adopted." (PageID.55.) Plaintiff disagrees with this assessment, arguing that both her lower back and mental health conditions have worsened since the prior decision.

### 1.    *Plaintiff's Degenerative Disc Disease*

Regarding Plaintiff's lower back, the record from the previous decision noted that Plaintiff injured her back in a November 2009 lifting incident. (PageID.118.) Plaintiff was treated with medication at the emergency department and attended a course of physical therapy in December 2009 and January 2010. (PageID.118.) Plaintiff also treated at Seeds of Grace ministries' Renewed Hope Health Clinic where she generally was treated with medication. (PageID.319, 322, 325, 327.) She was also referred to a neurosurgeon on March 12, 2011, who, according to Plaintiff, recommended injections to treat her pain, though it does not appear such injections ever took place. (PageID.322–323.) Plaintiff also underwent a consultative examination on November 4, 2010. She reported pain after sitting for a half hour and after standing for fifteen to twenty minutes. (PageID.307.) She had decreased range of motion in the lumbar spine limited to sixty degrees and she sat askew in her chair secondary to her pain. (PageID.308.) Plaintiff also had an MRI on December 2, 2010. The impression of the scan was a "small to moderate broad based posterior disc protrusion at L4/5, slightly eccentric towards the left and with this disc abutting the central aspect of the left L5 nerve root. There is no clear evidence for nerve root compression or displacement." (PageID.351.) As the prior ALJ recognized, these records taken together demonstrated a significant limitation on Plaintiff's ability to function, and ALJ Ohanesian accordingly assigned a highly restrictive RFC for a reduced range of sedentary work. (PageID.118.)

Plaintiff argues her condition worsened subsequent to ALJ Ohanesian's opinion by pointing to an August 20, 2013, MRI.  This scan was compared against the December 2010 MRI.  (PageID.608.)  The MRI revealed "[d]egenerative disc disease in the lower lumbar spine, most advanced at L4-L5, with a moderate size central and left paracentral L4-L5 disc protrusion, the left paracentral component of the disc protrusion appearing to impinge upon at least the left L5 and possibly some of the left sacral nerve roots . . . .  The L4-L5 disc protrusion is significantly increased in size from 12-2-10 with associated worsening impingement."  (PageID.383.)  As ALJ Reamon correctly noted, on its own this record does not demonstrate that Plaintiff's condition had worsened or that she was further limited such that her current condition was incompatible with the prior RFC.  This is so because, as the Sixth Circuit has observed, "the mere diagnosis" of a condition "says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *see also McKenzie v. Comm'r of Soc. Sec.*, No. 99–3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000) ("the mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual").  The record contains no medical source opinion–treating or otherwise–opining how this record demonstrates Plaintiff is now further limited than she was as of the prior decision.  Indeed, as ALJ Reamon noted, there was "no evidence" the degenerative disc disease documented by the latest MRI "actually increased her pain or provided her with additional limitations."  (PageID.56.)  This is supported by the ALJ's observation of the minimal treatment Plaintiff received for degenerative disc disease after the prior decision.  The ALJ noted, in fact, that Plaintiff did not again seek treatment for her back pain until February 2014 when she only received a refill of her medications.  (PageID.56.)  At bottom, the

record does not demonstrate Plaintiff's lower back condition worsened subsequent to the prior decision such that the ALJ erred in applying the prior RFC.

Plaintiff contends that the ALJ erred in making the above observation without considering the fact that she was unable to afford consistent treatment due to the lack of treatment. (PageID.609.)  Plaintiff points to an agency ruling stating that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." This includes the individual's inability to afford treatment. SSR 96–7p, 1996 WL 374186, at *7–8 (S.S.A. July 2, 1996). The issue of Plaintiff's ability to afford health care was placed squarely before the ALJ at the administrative hearing.  When the ALJ asked if Plaintiff had seen anyone since the MRI, Plaintiff responded that she had not because she had no insurance.  (PageID.81.)   The ALJ observed, however, that Plaintiff was nonetheless able to obtain the MRI.  (PageID.81.)  In his decision, ALJ Reamon also noted Plaintiff was hopeful she could have something done with her back in April 2014, but that she was denied Medicaid.  (PageID.58.)   In this, the ALJ gave appropriate consideration to Plaintiff's ability to obtain treatment and, given the severity of Plaintiff's complaints, it was not unreasonable for the ALJ to expect Plaintiff would seek more intensive care.  In any event, "[t]he party seeking to avoid the application of res judicata bears the burden of proving changed circumstances." *Merrill v. Colvin*, No. 2:14-CV-262, 2015 WL 1637435, at *2 (S.D. Ohio Apr. 13, 2015) (citing *Drummond*, 126 F.3d at 843.)  Plaintiff has not satisfied this burden.

2.    *Plaintiff's Emotional Impairments*

ALJ Ohanesian also thoroughly examined the record before him regarding Plaintiff's depression.  At step three, he considered whether Plaintiff's depression met or equaled the criteria of a listed impairment.  (PageID.119.)  ALJ Ohanesian considered a consultative examination that diagnosed Plaintiff with a Global Assessment of Functioning score of 55, which suggested moderate symptoms or difficulties in social or occupational functioning.  (PageID.117.)  The examiner also diagnosed Plaintiff with a major depressive disorder as well as panic disorder, assigned a guarded prognosis, and noted Plaintiff required psychotherapy.  (PageID.117.)  ALJ Ohanesian also considered Plaintiff's ability to do some activities, such as washing dishes, watching television, and visiting her grandchildren.  (PageID.117).  In social functioning, the ALJ found she had mild difficulties.  She got along fairly well with others, including family members, friends, neighbors and coworkers.  (PageID.117.)  Proceeding to the RFC discussion, ALJ Ohanesian noted Plaintiff had testified she attended monthly counseling sessions, she had disrupted sleep, trouble focusing, and feelings of guilt or worthlessness.  She also had suicidal thoughts but no attempts, isolated herself, and did not want to go out in public.  (PageID.120.)  The ALJ also assigned reduced weight to the opinion of a social worker who found, among other things, that Plaintiff had mild difficulty following work rules, moderate difficulty relating to coworkers and supervisors, and marked difficulty dealing with the public.  He doubted Plaintiff would be able to complete full time work, week after week.  (PageID.121.)  The ALJ found, however, that this opinion was inconsistent with Plaintiff's reported activities.  (PageID.121.)  After considering all this, ALJ Ohanesian limited Plaintiff to simple, routine, and repetitive tasks. (PageID.118.)

Plaintiff's allegations in the present application are generally similar to those she previously made. At the administrative hearing with ALJ Reamon, for example, she testified she had trouble sleeping, only ate two meals a day, had a poor memory, and had suicidal thoughts a couple times a month. (PageID.85.) She stated she isolated herself because of panic attacks. She testified she could not be around large groups of people. (PageID.86.) She reported, however, being able to have coffee with friends and visit her children and grandchildren a few times a week. (PageID.277.) All this tracks with her prior assertions. Likewise, the opinions of her social worker, Davis Morse, generally mirror those of the social worker from the prior opinion. (PageID.585–590.)

In support of her contention of a worsening condition, Plaintiff largely depends on an inpatient psychiatric hospitalization at Forest View Hospital in October 2013. At that time, Plaintiff was admitted for planning to overdose on her prescription medications. The intake note found Plaintiff was increasingly depressed after the death of her mother, and felt overwhelmed. (PageID.423.) Plaintiff stated that during this hospitalization she attended classes and her medications were adjusted. (PageID.77–78.) After this hospitalization, Plaintiff appeared "somewhat better" but was still depressed and overwhelmed. (PageID.411.) Plaintiff continued to visit with a social worker, and at a November 14, 2013, medication review, Plaintiff stated she was "feeling a lot better." She stated this was the first day she had not been crying. She spoke of Christmas shopping for her grandchildren. (PageID.399.) However, at a periodic review in December, her social worker indicated Plaintiff's current and past trauma had not resolved, and that she required continued treatment. She had difficulty leaving the house, frequent anxiety episodes, and racing thoughts and heart rate. (PageID.394.)

To be sure, Plaintiff's psychiatric hospitalization demonstrates a downward departure from her condition that was before ALJ Ohanesian. As that ALJ noted, Plaintiff had not undergone any psychiatric hospitalizations. Now she has. But any increase in the severity of Plaintiff's depression appears to be temporary in nature. By all accounts, after her hospitalization she returned to her previous condition, as limited as that might be, and accordingly it does not appear that Plaintiff's symptoms worsened or were expected to worsen such that this more limited condition could be expected to last for at least twelve months. *See Vaughn v. Comm'r of Soc. Sec.*, No. 14-CV-12496, 2015 WL 5216165, at *4 (E.D. Mich. Sept. 4, 2015) (collecting cases). True, she continues to have suicidal thoughts, but that was the case prior to ALJ Ohanesian's decision as well. She also persists in isolating herself and feels overwhelmed, but is nonetheless able to visit with family and friends. Again, this is consistent with the record that was before ALJ Ohanesian. In short, as with her back condition, the ALJ's decision that no new and material evidence existed to alter the prior RFC determination is supported by substantial evidence.

### E.      ALJ Reamon's Credibility Determination.

Plaintiff makes an additional argument that the ALJ erred by stating it was Plaintiff's familial difficulties, rather than an inherent illness, that was the "primary rationale for not assessing greater mental health limitations." (PageID.611–612.) It appears Plaintiff challenges the ALJ's credibility determination.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other

14

symptoms will not alone establish that [she is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009).  Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard.  *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).  However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony").  It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully

credible, a finding that should not be lightly disregarded.  *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987).  In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable."  *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

The thrust of Plaintiff's argument is that whether due to internal or external forces, her limitations are the same, and the ALJ should have found that her depression limited her to a greater extent than that accounted for in the RFC.  (PageID.611–612.)  The Court disagrees that ALJ Reamon used the cause of Plaintiff's depression as his primary rationale for discounting Plaintiff's allegations.  The ALJ's discussion on this point is as follows:

> First, it is clear from the record that external stressors resulting from the claimant's familial, financial and relationship difficulties are significantly contributing to the claimant's symptoms of anxiety and depression.  The claimant is going through marital problems and has significant problems with her children, as one was homeless with his own kids.  Her kids are always over, bringing their kids and it appears that claimant is all too often compelled to [] take care of her grandkids on a regular basis.  This state of affairs contradicts some of the assertions that she is unable to do anything and instead, relies upon her family.  Most of her therapy sessions center on how to deal with her ongoing familial problems.  Although it is quite conceivable that the claimant is experiencing some of the symptoms she has alleged, the evidence reveals that these symptoms are due in large part to difficult domestic situational factors rather than to inherent mental illness.  That claimant rather consistently responds to the calls and demands of her family is commendable but does not tend to support the proposition that she is somehow disabled in her attempts to remedy all this familial tumult.

(PageID.60.)  The ALJ went on to note that

> Her ability to care for her 8-grandchildren on occasion is evidence that she is not as incapable of caring for herself and thus, is at most moderately limited in the area of her activities of daily living.  Socially, it appears that most of her problems center around getting along with her family and there is no evidence that she has difficulty

16

getting along with others outside her family.  In fact, she does admit to going to her friends' home to visit in spite of her claimed anxiety. The ability to leave her home and see friends is evidence that she is not as limited as she claims and thus, is found to be mildly limited in her social functioning.

(PageID.61.)

As the above discussion makes clear, the ALJ did not discount Plaintiff's credibility because her depression was due to familial strife rather than an internal illness.  Rather, the ALJ noted inconsistencies within Plaintiff's testimony and her activities.  Indeed, as the ALJ noted, much of Plaintiff's therapy centered on her family life and focused on setting up boundaries. (PageID.520.)  She was "over involved in wanting all her family members to get along." (PageID.431.)  For example, on November 6, 2013, Plaintiff reported that she "just wants to be in my room for a while and journal, but we have to babysit a new granddaughter and [my husband] won't let me have my space."  (PageID.405.)  Nonetheless she wanted to be there to take care of her grandchildren.  (PageID.428.)  Outside of her family, she reported getting along "OK" with friends. (PageID.374.)   She reported being able to get along with authority figures.   (PageID.243.) Ms. Brenda Gilbert, a friend of Plaintiff's, reported Plaintiff didn't leave the house because of pain, and didn't mention depression or any other mental ailment as limiting her social activities. (PageID.250.)  Rather, Plaintiff was afraid to go out because of her pain.  (PageID.251.)  Clearly, as the ALJ found, Plaintiff's family is a significant source of stress to Plaintiff, and Plaintiff continues to be limited by her degenerative disc disease.  Nonetheless, the ALJ's observation that Plaintiff's activities are inconsistent with her testimony is supported by substantial evidence.  While Plaintiff is undoubtedly limited by her conditions, such limitations are adequately accommodated in the RFC. This claim of error is denied.

17

**CONCLUSION**

In accordance with the Opinion entered this date:

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**.  A
separate judgment shall issue.


Dated:     December 27, 2016          /s/ Robert J. Jonker
                                       ROBERT J. JONKER
                                       CHIEF UNITED STATES DISTRICT JUDGE

18